HERMAN SCHEURER AND OTHERS v.
KARL SCHEURER AND OTHERS.

249 N. W. 2d 181.

December 23, 1976—No. 46857.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty, John C. McNulty,* and *Marcy S. Wallace,* for appellants.

*Mason & Mason, Marion D. Mason, Mackall, Crounse & Moore,* and *Roger V. Stageberg,* for respondents.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

PER CURIAM.

Karl Scheurer (Karl) has acquired various real estate holdings during his lifetime. In 1957, Karl incorporated these holdings. The capital stock of the company has always consisted of 100 shares, issued and outstanding, of which Karl remained the majority shareholder until April 1967. During the intervening years, between incorporation and April 1967, he transferred 48 shares of stock in the corporation equally to his four sons and their respective children.

In 1966 Karl expressed a desire to transfer his remaining 52 shares of stock to his sons. However, Karl also stated that while he wanted his

sons to possess the remaining shares of stock, he did not want to forfeit his control of the corporation until his death. At the suggestion of Karl's son, Herman, a voting rights agreement was prepared by Herman's attorney to give Karl a feeling of "security." The agreement purported to grant Karl the voting rights of all 100 shares of the corporate stock.

Thus, in April 1967, Karl executed stock certificates transferring 16 shares to his son Herman and 12 shares to each of his three other sons. At the same time the voting rights agreement was executed by Karl, Herman, and one of his brothers. Herman assured his father that he would personally obtain the remaining necessary signatures to empower Karl with the right to represent all 100 shares of the company's stock. This representation, in fact, was never fulfilled. Nevertheless, Karl assumed that the agreement was valid and on one occasion purported to vote 100 shares of corporate stock to compensate Herman for his services to the corporation.

The internal affairs of the corporation remained relatively harmonious until the January 1974 meeting of the board of directors. Karl was neither notified of nor in attendance at the meeting. At this meeting, a new board of directors and officers of the corporation were elected. Karl was not included among the new officers of the corporation. From this point on, Karl began to lose confidence in the management of the company. Thus, in June 1974, Karl arranged a special meeting of the shareholders. At this meeting he employed the voting rights agreement together with stock voted by his other sons to oust the board which had been elected the previous January. Then, without the use of the agreement, a new board was elected. Later that summer, new officers of the corporation were also installed.

Following this sequence of events, Herman[1] commenced this action to invalidate the voting agreement. Karl filed a counterclaim asking for recission of the April 1967 transfer of his remaining 52 shares. He premised this counterclaim, in part, upon the grounds that Herman fraudulently induced him to transfer his remaining shares by representing the fact that Herman would obtain the necessary signatures to make the agreement operative.

The trial court held that the voting agreement was valid, that the new board was properly elected, and granted Karl recission of the April 1967 transaction in which he transferred his remaining shares of corporate stock to his sons.

On appeal, Herman does not dispute the findings of fact or conclu-

---

[1] In this context, we are referring to all of the plaintiffs.

sions of law of the trial court but argues that the relief granted thereunder was improper.

We have examined the transcript, the record, and the proceedings herein and conclude that the relief granted by the trial court is consistent with the pleadings, its findings of fact, and conclusions of law, and accordingly affirm.

Affirmed.